The next argument is in Appeal 2008-1436, In Re Natures Remedies. Mr. Marshall, good morning. Good morning, Your Honors. May I take the opportunity to introduce my associate, Dennis Haas, who will assist me? May it please the Court, I reserve three minutes, so let me try to get directly into the important issue. As you know from the briefs, this appeal comes from a third-party re-examination request. What is less than substantial about the evidence upon which the Board relied, namely the declaration of the Danish government secretary? Your Honor, you can take everything that she said as true, and it is true, and it doesn't get you one single probative evidence about the ultimate issue. What she said, and the only relevant part, is that this document that was filed with us can be requested by the public under the Danish Open Files Act, and if that request is made, we will provide access to it according to the rules that I have attached to my declaration. And when you read those rules, you find... Now when you say rules, are you talking about something other than the statute? The rules that she attached are the Danish Open File Act. Within that act are certain rules as to what things, what information, what documents are exempt, and what information may be exempted. Do you know how this works? If I file a report with the Danish Authority, and then Judge Mayer asks for a copy of it, does the agency call me up and say, does this involve your business such that you wouldn't want the requester to get a copy? Or does the agency just make a guess as to whether it has economic impact? Or does the agency require that if the filer wants it to be confidential, it has to be so stamped upon filing? Or what? How does this act get implemented? If you want the answer to that from this record, you will not find it. Do you know the answer? I believe it works in the way that the Freedom of Information Act works in the United States, in which there is a notification given to the depositor, and the depositor can make the request that certain things be exempted. If there is a dispute about that, the agency will rule. But in this record, you will not find that. So your position essentially is that nothing said in the Secretary's declaration addresses the only issue in this case, which is whether this particular document, if requested, would have been handed out, and therefore can be properly deemed, quote, publicly available. That's correct. That issue is not addressed, and yet you have to ask yourself why it was not addressed. It would have been very easy, if the requester had wanted that to be addressed, to have pointed out that the only place that the composition of the drug is contained in the notification is on a separate appendix, and that she could have answered the question if asked, would normally the composition of a drug undergoing clinical tests be kept confidential? Okay, but I'll tell you what the problem is. The Shearer declaration seems to be somewhat ambiguous in terms of whether she's saying it would have been publicly available because the rules made it publicly available, or whether her language in accordance with means that it would have been publicly available if it satisfied the requirements of the rules. You have diametrically opposite interpretations of the Shearer declaration. The question is, couldn't the PTO look at that declaration and say, well, we understand it to mean that it would have been made publicly available because the rules allowed it to be made publicly available? And if they could do that, then don't you lose under a substantial evidence standard? Well, yes, if they could do that. But you have to understand, you just posited the key to the case. It's the substantial evidence standard. The substantial evidence standard is not a free pass. It's more deferential than a review that you give to an Article III court. But it's still your obligation as a reviewing court to make sure the evidence is sufficient. Now, let's articulate the reasonable evidence standard. It's such evidence, or the substantial evidence standard. It's such evidence as a reasonable person would accept as adequate to support the conclusion. Once you posit that, you have to say there is probably a lesser showing where a reasonable person would find it not adequate. And the question here is exactly that. I don't understand you to really be answering Judge Dyke's question. If we find it, we know you think it's not ambiguous, but if we find the Shearer Declaration to be ambiguous, then why isn't it permissible for the Board to make the interpretation they did? Because you're actually reviewing it. As I said, the standard you're applying is sufficient to the evidence. And the question is, would a reasonable person find it adequate? Why isn't that saying it's not ambiguous? Well, the question is whether the evidence is actually probative of what the ultimate question is. The ultimate question wasn't whether the document was filed or whether it was indexed. The ultimate question was whether the information on the drug would have been disclosed. If you read it as saying that they would have followed the rules, then you have to say, after following the rules, what would have been the outcome? What the requester was trying to say is, I will word this for the Secretary so that we can get at least the impression that it would be... Well, we're not going to probably want to guess it. You have to address the inference, though. Wouldn't you normally draw the average... How about the evidence that your client was planning and cleared it to be released to a journal for public dissemination to be read in conjunction with the statute? Yeah, let's take a look at that in terms of the inference. Wouldn't the Board be entitled then to conclude that it would have been released? Yes, that's time. But, I mean, let's just think what that means. If you read the notification, the background says that, in 1989, we did studies that are still unpublished. In 1992, we did studies that are still unpublished. We are now going to do new studies with Sonogram, and when those are concluded, they'll be published in a scientific journal that this is the author. It's a statement of what I intend to do, but not a statement of timing. And the timing would be when it's done, when we have satisfied the obligations in terms of filing any patent application or things of that nature. At that time, we intend to publish. It has nothing to do with saying that the patent officer's interpretation is somehow, since he's intending to publish, he never intended it to be confidential. That's certainly not supported by substantial evidence. It's a false conclusion. Let me ask you about your side's affidavit by Mr. Sanders, the Danish attorney. We talked about ambiguity or deficiencies in the affidavit of Scherer, but the Sanders affidavit seems to also have a huge hole in it because the determinant under the statute of whether something is going to be released or not turns on whether it has economic consequences for the filer. But in his affidavit, Mr. Sanders, as far as I could see, never said a single word about economic consequences to the filer. What he said, though, is that this is the type of information that when you are testing a new drug and the composition is confidential, I don't know what a burden of proof is or a level of economic injury, but doesn't the agency sort of presume or shouldn't they presume that if you kept something confidential that disclosing it would cause you injury? I mean, the Patent Office, if they're going to draw a headline for a suit... It won't help me if you say what Sanders could have said. What I'm trying to figure out is from what Sanders actually said, where does he speak to economic effect? What he says is this is the type of information that falls under the Act, which means it's the type of information... No, but the Act requires two things, that it be a certain type of information and that it have economic effect. He does say it falls in this category of information, but as far as I could tell, he doesn't say or imply anything about the second requirement of economic effect. I agree with you. He's implying what he's really doing is short-cutting, instead of going full range and saying information of this kind would normally also have an important economic effect on the company because it's important to preserve patent rights. Yes, he should have made those things that other people might say are implicit in the statement. So doesn't that mean that you have to lose if we agree with the Board that the Shearer Declaration constitutes a prima facie case of public availability? I'm going to say yes, as long as we're agreed. As both of us are talking about what is a prima facie case. You say there's no case, much less a prima facie case. I understand that. But if there is a prima facie case, if we find there is a prima facie case based on the Shearer Declaration, then you agree that it can't be trumped by the Sanders Declaration. Yes. Let me just clarify that. A prima facie case is when a party produces enough evidence to infer the fact at issue, and you can file in the party's favor. So if we're talking about that, if the evidence were truly enough for the patent office to say this is substantial evidence we can find, then they are free to weigh other evidence. I don't disagree with that. And if they take other evidence that I might find conclusive, but they don't, then you can't reverse it. But you can reverse if there's not substantial evidence to support the finding. All right. Let's hear from the other side, and then you've got a little over four minutes for rebuttal. Mr. McManus, good morning. Good morning. May it please the Court. The Board's reading of the Shearer Declaration here is supported by substantial evidence. It doesn't have to be proof. I don't understand what you're saying. The only evidence on your side is the Shearer Declaration. The issue is what is she actually saying? They argue she isn't saying anything about public availability. All she's saying is the records we keep here are kept and released according to the Act, period. Two responses, Your Honor. That reading is too narrow. If you read this in its totality, she says, I make this declaration of my own personal knowledge, that's paragraph 1 in A120. She says, I'm aware of the Act. I'm aware of the SNEC reference. That's at paragraph 3. And what she says is, quote, as required by the Danish Open Files Act, the SNEC reference is a public record and has been open to inspection by the public since 10 April 1996 in accordance with the rules of the Act. Whoa, whoa. What does it mean in accordance with the rules of the Act? Because the Act says some things are publicly available, but other things are not publicly available. And she doesn't say which category this falls in, that I can see. The Board's reading of her statements there is that she's making an affirmative offering that this document was publicly accessible since the moment they got it under the Act. How can she say that? The Act provides that if it's a certain kind of information, which it seems without a doubt it is, and it would have an economic effect, then it's not publicly available. And how would she know whether it's going to have an economic effect or not? She's just a record keeper. She doesn't know anything about the filer, does she? Well, she says, I'm aware of the SNEC reference and I'm aware of the Act. And in light of that information, I tell you that this document is a public document, that you could get this document. But we know that can't be true because the Act says some things are public, some aren't. The Act's default is one of access. Yes, that's a fair way to put it. I'll get it corrected. So unless you can prove to me otherwise, this is a public document. But if that's all she's saying, it doesn't help us because their position is, of course we could prove otherwise, and we did with the Sanders Declaration. The Board's reading it. Do you agree with Mr. Marshall's description of the process to understand it's not in the briefs, but that in fact the way this Act works is if somebody makes a request for the information that the submitter is contacted and he asks whether there's any objection? Your Honor, I don't know if that is the way it works. I attempted to find out and I could not. Let's assume that it is. They would still lose. Why? Because ostensibly the information they would have come back with is the same information they came with based on our prima facie case, which was the Sanders Declaration. And as we've talked about, and I think they agree, Sanders does not establish the material importance prong of the Act's exemption. So if he can't establish the exemption, then Scherer is right. This is a public document. And to go back to the broader question of what Scherer stands for, even if you don't love the reading that the Board gave Scherer, it is a reasonable one. Well, that's the question. They argue that it's an absolutely impermissible one because she doesn't say anything on the point in issue at all. So it's not substantial evidence. It's zero evidence on the only point in issue. We would disagree. The Board at A23, it's addendum page 21, says, interprets her statement to say, this document. No, there's no question how they interpret it. The question is whether that interpretation is reasonable.  They say it isn't. And in such a situation, Your Honor, I suggest it's the epitome of substantial evidence. Even if you can give the evidence two different readings, diametrically opposed, so long as the one that the Board gave it is reasonable, then it prevails. I think that's quite fair. But why is it a reasonable reading? How could she possibly know what the economic effect on the filer would be? She's not in the drug industry, the weight loss industry, et cetera. Well, we have to imagine. She's a record keeper in a government agency in Copenhagen. Well, we're not quite sure. She says she's the secretary of the committee, but there's no reason to believe that she's not in a position at the committee to establish the facts that the Board has said she establishes. Well, but let's assume that we were to reject that and say that the only reasonable interpretation of this letter is that the document would be made public unless there were an objection that were satisfactory under the Act. Couldn't, as Judge Muir was suggesting, couldn't the Board look at this statement about the intent to publish and conclude that that would mean that they couldn't establish this economic harm requirement under the Act? It certainly would undercut their position. But now the question is, could the Board reasonably conclude that they wouldn't be able to satisfy the requirements of the statute because of the plans to make it public? Yes, they could, Your Honor, and that's what the Board said in discussing that evidence. But what's the economic harm here? It looks like the economic here is their patent was invalidated, and that came about because of the conclusion that the record was publicly available. So the fact that studies would be published later, after the patent was filed for, not more than a year before the patent was filed for, seems to me to be irrelevant to whether there was economic harm from a public release back at the time in question. Well, the relevance, first of all, Muir tells us, In Re Muir, tells us that the intent to publish is a consideration under the Public Accessibility Inquiry. The reason why their statements of intent to publish and it's more than just an intent to publish, it's an intent to publish and it's intent to provide the clinical trial participants with the access information to get to the SNAC reference without any indications or any attempt on their part to limit that access. When you look at that information, it completely conflicts with their position that, Oh, we want to keep this so close to the vest because this is going to have an economic impact. To the contrary, the very reference itself indicates you're going to share this freely. But I thought the argument was, yes, we're going to share it in excruciating detail, but years later so that it won't be prior art against us. Well, we don't, I mean, all we have is what's on the paper in the SEC reference and it says an intent to publish. Now, how the dates fell with respect to patent applications and the like, we don't know because all we know is in a stated instance. But I thought it was clear that they were going to publish the results of the clinical trial, but the document that's said to be publicly available is not the results of the clinical trial. It's the pre-trial filing with the Danish government to get permission to even conduct the clinical trial. There's two pieces of evidence on an intent to share, intent to publish. There's the publication in a document or in a periodical, and there's the intent to grant access to the SNAC reference itself to the clinical trial participants. Yes, but I thought his argument with regard to the second was, yes, we would make the filing publicly available too later. But the only issue is whether it was publicly available before, not later. Right. To the extent, we don't need the evidence of intent to publish. The Board was correct in saying that it undercuts your position that you would not have had, that there would have been a material impact and thus you would have wanted to have kept it secret because there's this intent to disseminate. But we have to go back to the affirmative evidence that the share declaration establishes, and it's reasonable reading given to the Board. If you look at the declaration, it says, under a reasonable reading, you may have a different reading that's seemingly as reasonable, but that doesn't mean that the Board's reading is wrong. Why didn't the Patent Office exert itself a little bit to really find out? Is there no mechanism for asking the Danish government, how does this thing work and would this have actually been released and does the filer have a chance to object, etc.? Why couldn't you have found out? Instead of the Board guessing, frankly, that's the way it looks to me, just guessing based on Sanders' affidavit that it would have been publicly available. Why guess? Why not have to have evidence to carry your burden of proof? A couple of responses, Your Honor. First, with all due respect, I'm not sure they're guessing. I think they're giving an interpretation to the share declaration based on what she says. But to bring it more globally out to the process, this is an ex parte process, and as this Court has explained in cases like Wong, the ability of the Court to establish affirmative evidence is quite limited. That's why the burden of establishing a prima facie is only the preponderance burden. So long as enough of a question has been called to establish the issue, we shift the burden to the other side. Why? Ostensibly, they're in a much more readily accessible position to give us the evidence to overcome that. For example, here, they could have gone to the Danish files and asked for the thing, and they either would have gotten it or they wouldn't have. But they chose to rebut their case with the Sanders declarations, and Sanders' declaration does not establish the factual predicates to carve out the exemption. Could I back you up just a moment? Sure. The purpose of this filing is so that they could conduct the investigation. Is that correct? That's my understanding, yes. So they make this filing. They say we're going to conduct an investigation, and they say at the end of it, when the investigation is complete, we're going to publish the results of it. All right? Now, what I'm having trouble seeing is why there would be economic harm to publishing the thing earlier except to the extent that it might affect patent rights. So they don't tie the publication to the patent right issue. They just say we're going to publish it. So my question is, could the PTO properly conclude that this undertaking to publish it showed that they couldn't maintain the confidentiality of it? If it was the only fact? Is that your question? Well, we know it's not the only fact because we know about the public records law. Right. I think it's reasonable for the Board to have given the reading and relied on the intent evidence here for the purposes for which they relied upon it, which was it undercuts your position of material importance. And again, I think it's more than just the intent to publish in a periodical. It's your intent to give access information to the very information that you say would not have been given out in the first place. So, for example, if you sign up to participate in this clinical trial, according to the page A132, which is part of the SNAC reference, the last sentence in that page says, the investigation has been reviewed and reported by the Scientific Ethical Committee under project number X. That's evidence of their intent to give the information that they now say would not have been given out. I don't know why they would have given the access information to the clinical trial participants if they would not have allowed them to see it. Is there any other questions? Well, I don't understand why in the context of this case you think the Patent Office burden should be so low. It may be true that in general in ex parte examinations, the ability of the Patent Office to procure external evidence beyond what's filed in the application is limited. But this isn't an ordinary ex parte examination. As I understand it, this is a re-examination prompted by a third party based on the shearer affidavit filed by the third party. And in the face of its ambiguity, I don't understand why the Patent Office isn't obligated to find out what's the truth here, what are the facts before they shift some burden to the re-examination applicant. Well, Your Honor, with due respect, the reason why we have a low threshold for the prima facie is exactly that problem, which is if we can't rely admittedly on imperfect evidence, I'm willing to concede that this is not a model of clarity. But reasonably read, the shearer declaration establishes... No, wait, wait, wait. Your assumption is that the Patent Office lacked power to figure out what was going on. We've specifically held that the Patent Office has the power to compel the applicant to submit additional evidence. I mean, you can't be arguing that the Patent Office couldn't have gotten a complete view of the facts here by compelling the applicant to submit more information. No, Your Honor, that's not what I'm saying. I understood Chief Judge Michel's question to be asking why we, on our own initiative, couldn't have called the Danish authorities to get the information that we're debating about now. Do I understand your question correctly? Yes. And my response to that is the reason why we have the prima facie case regime and the lower threshold for the prima facie is for us to procure our own information, leaving aside asking the applicant for it. They're sort of the same. They have the same purposes. Well, what about the requester? Why couldn't you have put the burden on the requester to clarify exactly whether the particular records would have been publicly available or not? Well, this is an ex parte. This is not an inter parte. Yes, but we know the origin of it. The origin of it is there's a requester, and the Commissioner said, request good enough, we'll do a re-exam. But if the record is incomplete, why isn't it incumbent on the patent office to make it more incomplete by putting some further burden on the requester and or the patent applicant himself? Here we chose to put the burden on the patent applicant himself. Well, we understand that, but the issue is how high should the bar be to establish a prima facie case? The bar is whether or not the evidence that we submit establishes the prima facie case is supported by substantial evidence. Is the board's reading of the evidence and the evidence upon which it relied reasonable? And I submit to you that reading the shared declaration in its totality, it is. Does the patent office have the authority to compel the requester to supply additional information? I don't know the answer to that, Your Honor. I'm not aware. Whether it can compel it or not, if I'm the requester, I want the re-examination to go forward, and I want it to prevail because I don't want this patent out there. So I've got every incentive to cooperate and file follow-up declarations that will clarify the very mystery that the first declaration left everybody with. I see I'm out of time, but if I can respond to that. I can't speak for what the third-party requester was doing or observing or wanted to do. Our burden is to establish by preponderance the prima facie. We relied on the shared declaration, and perhaps for the reasons that we read the shared declarations in the same way the third-party requester felt, nothing more was needed in that. This is a reasonable reading of her affirmative offering that this is a public record to quote paragraph 4 at A121. That shifts the burden to them. How they want to come back and rebut that is their choice, but here they failed to do that. So this should be affirmed. All right, thank you. Mr. Marshall, you have a few minutes for rebuttal. Thank you, Your Honor. I'll confine my remarks to things that were raised in the Patent Office case, but referring first to the notification to the participants in the study that was cited as Appendix 132, if you look at that notification, one thing that strikes you is the participants are told that they're going to be taking a composition that's an herbal composition from an approved list of foods, and specifically and conspicuously absent from that is what the particular herbal extracts are or what's the relative composition. So they weren't told the formulation. They were not told the formulation. But the formulation is the thing that's an issue. The formulation is the only thing that anticipates the claimant issue. The fact that it's herbal doesn't anticipate the claim. It's the fact of having three specific herbal extracts. Why didn't your declarant address this economic harm issue? I find that rather puzzling. So perhaps this declaration is carefully crafted not to address what may be a central issue here. I think it was carelessly crafted rather than carefully, is what my opinion is. It's possible to imagine why both declarations may have been either carelessly crafted or very artfully crafted. And the second thing is about the intent to publish. Thankfully, that's one thing that history has taken care of. There was no publication before the critical date. Otherwise, we would not be having this argument. The first mention of those studies are in the specification of the patented issue. If there are no further questions, I'll give you the rest of my time. All right. We thank both counsel. The case is taken under advisory.